# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

**JAN 10 2025**

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____OR_____
DEPUTY CLERK

IBRAHIM LABOR KOROMA   A#064197829

Petitioner, Golden State Annex
611 Frontage Road
v.   McFarland, CA 93250

MERRICK GARLAND ATTORNEY GENERAL, ALEJANDRO MAYORKAS SECRETARY OF DEPARTMENT OF HOMELAND; MOISES BECERRA, U.S. FIELD OFFICE DIRECTOR FOR THE SAN FRANCISCO DISTRICT FIELD OFFICE; AND T. ANDREWS WARDEN OF GOLDEN STATE ANNEX

Respondents

CIVIL ACTION NO. 1:25-CV-00046-SKO (HC)

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §2241, BY A PERSON SUBJECT TO INDEFINITE IMMIGRATION DETENTION



## BACKGROUND

Petitioner IBRAHIM LABOR KOROMA, hereby petitions this court for a writ of habeas corpus to remedy Petitioner's unlawful detention by respondents, and to enjoin Petitioner's continued unlawful detention by the respondent. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## CUSTODY

1. Petitioner is in the physical custody of respondents and U.S. Immigration and Customs Enforcement ("ICE"). Petitioner is detained at the Golden State Annex in McFarland, California. ICE has contracted with Golden State Annex to house immigration detainees such as Petitioner. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION

2. This action arises under the Constitution of the United States, 28U.S.C.§2241 (c)(1), and the Immigration and Nationality Act ("INA"), 8U.S.C.§1101etseq. This Court has subject matter jurisdiction under 28U.S.C.§2241, Art. I§9, cl. 2 of the United States Constitution ("Suspension Clause"); and 28U.S.C.§1331, as Petitioner is presently in the custody under color of the authority of the United States., and such custody is in violation of the constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (" We conclude that §2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); INSv.St.Cyr, 533U.S. 289,301 (2001) ("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest.")' Clark v. Martinez, 543U.S. 271 (2005) (holding that Zadvydas applies to aliens found inadmissible as well as removable).

## VENUE

3. Venue lies in the Eastern District of California, because Petitioner is currently detained in the territorial jurisdiction of this Court, at the Golden State Annex. 28U.S.C.§1391.

## EXHAUSTION OF REMEDIES

4. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court decision in Zadvydas, the, Department of Justice issued regulations governing the custody of aliens removed. See 8C.F.R. §241.4. Petitioner received a final order of removal on May 21st 2024. At his "90-day" custody review, on or about August 21st 2024, ICE decided to continue his detention. Subsequently in a decision dated December 17th 2024, ICE's Headquarters Post-Order Detention Unit ("HQPDU") informed Petitioner that it would continue to keep him in custody despite having been detained for six months after final

order of removal. The custody review regulations do not provide for appeal from a HQPDU custody review decision. See 8C.F.R. §241.4(d).

5. No statutory exhaustion requirements apply to petitioner's claim of unlawful detention.

## PARTIES

6. Petitioner is a native and citizen of Sierra Leone. Petitioner was first taken into ICE custody on May 11th 2023, and has remained in ICE custody continuously since that date. Petitioner was ordered removed on February 7th 2024 and the order became final on May 21st 2024. Petitioner is currently detained at Golden State Annex. Petitioner has been continuously detained by ICE for over 19 months.

7. Respondent MERRICK GARLAND is the Attorney general of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration & Naturalization act (INA). As such, MERRICK GARLAND has ultimate custodial authority over petitioner.

8. Respondent ALEJANDRO MAYORKAS is the Secretary of the Department of Homeland Security. He is responsible for the administration of ICE and the implementation and enforcement of the INA. As such ALEJANDRO MAYORKAS is the legal custodian of petitioner.

9. Respondent MOISES BECERRA is the ICE Field Office Director of the San Francisco Field Office of ICE and is Petitioner's immediate custodian. See Vásqyez v. Reno, 233 F.3d 688, 690 (1st Cir. 2000), cert. Denied, 122 s. ct. 43 (2001).

10. Respondent T. ANDREWS Warden of Golden State Annex, where Petitioner is currently detained under the authority of ICE, alternatively may be considered to be Petitioner's immediate custodian.

## STATEMENT OF THE FACTS

11. Petitioner, Ibrahim Labor Koroma was born in Sierra Leone on June 21st 1994. He arrived in the United states on October 3, 2015 as a legal permanent resident DV1 Diversity Immigrant. He arrived with a Sierra Leone passport.

12. On May 11th 2023 Petitioner was picked up by ICE outside his home.

13. On May 11th 2023, ICE charged Ibrahim Labor Koroma with being deportable because he had been convicted; larceny, possession of marijuana and false identification to law enforcement. He was ordered deported to Sierra Leone by the Immigration Judge (IJ) on February 7th 2024. Petitioner appealed to the BIA and on May 21st 2014 BIA dismissed the appeal and Petitioner order became final.

14. On May 11th 2023, ICE took Petitioner into custody to await his deportation. Petitioner received a final removal order on May 21st 2024. Since that time, petitioner has been continuously detained by ICE for over 19 months.

15. Petitioner's custody status was first reviewed on August 19th 2024. On August 21st 2024, Petitioner was served with a written decision ordering his continued detention.

16. On or about six months after Petitioner's removal order became final, ICE conducted another review. In a letter dated December 17th 2024, ICE informed Petitioner that Petitioner would not be released, because petitioner's deportation was "reasonable foreseeable." ICE did not specify how many individuals from Sierra Leone it had, in fact repatriated, indicate whether it had contacted the government of Sierra Leone with respect to petitioner's case, or mention whether it had received any information from Sierra Leone regarding the status of Petitioner's travel documents. Nor did it give an indication of when it expected petitioner's travel documents would be issue. Indeed, it gave no information concerning the existence or status of efforts to deport Petitioner.

17. In the 1 month that has passed since Petitioner's last custody review, ICE has not notified Petitioner of any progress in Petitioner's repatriation.

18. To Petitioner knowledge, the government of Sierra Leone has not issued travel documents for him. Indeed, neither ICE nor Sierra Leone have provided any indication that Sierra Leone would accept Petitioner in the reasonably foreseeable future. Sierra Leone will not issue travel documents because they do not recognize Petitioner as a citizen. Nationwide for several years, ICE has had extreme difficulty in securing travel documents for those ordered removed to Sierra Leone. Although Sierra Leone is bound by international treaty to help facilitate the removal of its nationals, there are often disputes as whether the individual is in fact a citizen of Sierra Leone. Even when there is no dispute, Sierra Leone regularly refuses to comply with such requests. The government of Sierra Leone refuses to take back deportees because the Chief Immigration for Sierra Leone and Sierra Leone foreign Ministry contest their nationality status. For the case of the Petitioner on July 19th 2024 he had an interview with the government of Sierra Leone which included the Sierra Leone foreign ministry and Chief of Immigration, at the end of the interview the government of Sierra Leone contested his nationality and told him he was not a national of Sierra Leone. Since that interview on July 19th 2024 ICE has not heard back anything from the government of Sierra Leone as it has gone radio silent. It's been over five months since the Petitioner had his interview with the government of Sierra Leone. After that interview Petitioner had made attempts to contact the embassy of Sierra Leone on several occasions and has left voice mails. In the month of October 2024 Petitioner was finally able to speak to someone at the embassy of Sierra Leone on extension 104#, the gentleman told Petitioner that he was present at Petitioner's interview on July 19th 2024 and the government of Sierra Leone had stated he was not a national of Sierra Leone. After that call every time Petitioner has tried the same extension 104# there is no answer, Petitioner has also tried reaching other extension with the same results.

19. Petitioner has cooperated fully with all efforts by ICE to remove Petitioner from the United States. On or around May 23rd 2024 Petitioner filled out an application for travel documents. Petitioner on July 19th 2024 was interview by the government of Sierra Leone. On July 26th 2024 Petitioner gave his Deportation Officer with contacts for his family members that was requested by the government of Sierra Leone. Petitioner has called the Sierra Leone embassy on several occasions and left voice mails with his name and Alien number directing them to issues travel documents and to contact DHS, ICE and his Deportation officer information.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

20. In Zadvydas v. Davis, 533 U.S. 678 (2001), the U.S. Supreme Court held that 8 U.S.C §1231(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period

reasonably necessary to secure removal." id. at 699. If the individual's removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute." Id. at 699-700.

21. in determining the length of a reasonable removal period, the court adopted a "presumptively reasonable period of detention" of six months. Id. at 701. After six months, the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. ICE's administrative regulations also recognize that the HQPDU has six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See 8 C.F.R. §241.4 (k)(2)(ii)

22. Evidence showing successful repatriation of other persons to the county at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported in the reasonably foreseeable future. See Thompson v. INS, 2002 U.S. Dist. LEXIS 23936 (E.D.La September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyanna on the application for travel documents that INS and the petitioner had requested). Rather for the government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, in must provide some meaningful evidence particular to the individual petitioner's case.

23. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. See Agbada v. JohnAshcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will grant" habeas petition after fourteen months if ICE is "unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).

## CLAIMS FOR RELIEF
## COUNT ONE
## STATUTORY VIOLATION

24. Petitioner re-alleges and incorporates by reference paragraphs 1 through 23 above.

25. Petitioner's continued detention by Respondents is unlawful and contravenes 8 U.S.C §1231 (a)(6) as interpreted by the U.S. Supreme Court in Zadvydas. The six-month presumptively reasonable period for continued removal efforts has expired. Petitioner still has not been removed, and for the reasons outlined above in paragraphs 1 to 20, Petitioner's removal to Sierra Leone is not reasonably foreseeable. The Supreme Court held in Zadvydas and Martinez that ICE'S continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonably and in violation of 8 U.S.C. §1231(a). 533 U.S. at 701.

## COUNT TWO
## SUBSTANTIVE DUE PROCESS VIOLATION

26. Petitioner re alleges and incorporates by reference paragraphs 1 through 25 above.

27. Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint. See e.g., Tam v. INS, 14F. Supp. 2D 1184 (E.D. Cal 1998) (aliens retain substantive due process rights).

28. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. While Respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify the indefinite detention of petitioner, who is not significantly likely to be removed in the reasonably foreseeable future. The U.S. Supreme Court in Zadvydas thus interpreted 8 U.S.C v1231(a) to allow continued detention only for a period reasonably necessary to secure the alien's removal, because any other reading would go beyond the government's articulated interest – to effect the alien's removal. See kay v. Reno, 94 F.Supp.2d. 546, 551 (M.D. Pa. 2000) (granting writ of habeas corpus, because petitioner's substantive due process rights were violated, and noting that " If deportation can never occur, the government's primary legitimate purpose in detention – executing removal – is nonsensical.")

## COUNT THREE
## PROCEDURAL DUE PROCESS VIOLATION

29. Petitioner re-alleges and incorporates by reference paragraphs 1 through 28 above.

30. Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning aliens concerning alien's custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates petitioner's right to procedural due process.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release Petitioner from custody, under reasonably conditions of supervision;

3) Order Respondents to refrain from transferring the Petitioner out of the jurisdiction of the ICE San Francisco District during the pendency of these proceedings and while the petitioner remains in Respondent's custody; and

4) Grant any other and further relief that this court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct. Respectfully submitted this 7th of January 2025.

*/s/ Koroma*

IBRAHIM LABOR KOROMA, Pro Se

Golden State Annex
611 Frontage Rd
McFarland
CA 93250

## CERTIFICATE OF SERVICE

I, IBRAHIM LABOR KOROMA, certify that a true copy of the above document (Petition for Writ of Habeas Corpus) together with the attached documents, was served on January 7th 2025, upon the following:

U.S. Attorney's Office

950 Pennsylvania Ave NW
Washington, DC 20530

by placing a copy of the above in the mail system at the facility where I am detained.

*[signature]*

IBRAHIM LABOR KOROMA, Pro Se



U.S. Department of Homeland Security

## Archived Content

In an effort to keep DHS.gov current, the archive contains outdated information that may not reflect current policy or programs.

# DHS Announces Implementation of Visa Sanctions on Four Countries

**Release Date:** September 13, 2017

For Immediate Release
Office of the Press Secretary
Contact: 202-282-8010

*Cambodia, Eritrea, Guinea, and Sierra Leone Have Failed to Accept Removed Nationals*

WASHINGTON — The Department of Homeland Security (DHS) today announced, in coordination with the State Department, the implementation of visa sanctions on Cambodia, Eritrea, Guinea, and Sierra Leone due to lack of cooperation in accepting their nationals ordered removed from the United States.

Pursuant to her authority under Section 243(d) of the Immigration and Nationality Act (INA), Acting Secretary of Homeland Security Elaine Duke notified Secretary of State Rex Tillerson that the governments of Cambodia, Eritrea, Guinea, and Sierra Leone have denied or unreasonably delayed accepting their nationals ordered removed from the United States. As a result, Secretary of State Tillerson has ordered consular officers in these countries to implement visa restrictions on certain categories of visa applicants, determined on a country-by-country basis. Without an appropriate response from the impacted countries, the scope of these sanctions may be expanded to a wider population. The suspension will remain in place on each of these respective countries until the Secretary of Homeland Security notifies Secretary Tillerson that cooperation on removals has improved to an acceptable level.

"International law obligates each country to accept the return of its nationals ordered removed from the United States," said Acting Secretary of Homeland Security Elaine Duke. "Cambodia, Eritrea, Guinea, and Sierra Leone have failed in that responsibility. The United States itself routinely cooperates with foreign governments in documenting and accepting its citizens when asked, as do the majority of countries in the world. However, these countries have failed to do so, and that one way street ends with these sanctions."

As a result of the U.S. Supreme Court's decision in Zadvydas v. Davis, with narrow exceptions, aliens with final orders of removal, including aliens determined to pose a threat to the community or considered a flight risk, may not be detained beyond a presumptively reasonable period of six months if there is no "significant likelihood of removal in the reasonably foreseeable future." By delaying or refusing to issue travel documents to their citizens, the most common of which is a passport, or refusing accept their nationals within this time period, these countries have forced U.S. Immigration and Customs Enforcement (ICE) to release thousands of dangerous criminals into communities across the United States. Without a travel document issued by an alien's home country to confirm identity and nationality, ICE cannot complete the removal process, with very limited exceptions.

"American citizens have been harmed because foreign governments refuse to take back their citizens. These sanctions will ensure that the problem these countries pose will get no worse as ICE continues its work to remove dangerous criminals from the United States," said ICE Acting Director Thomas Homan.

These four countries have not established reliable processes for issuing travel documents to their nationals ordered removed from the United States. For this reason, ICE has been forced to release into the United States approximately 2,137 Guinean and 831 Sierra Leone nationals, many with serious criminal convictions.

9

There are approximately 700 Eritrean nationals residing in the United States who are subject to final orders of removal. Due to lack of travel document issuance, ICE continues to be compelled to release Eritrea nationals into U.S. communities, some with serious criminal convictions, including violent offenses and drug convictions.

There are more than 1,900 Cambodian nationals residing in the United States who are subject to a final order of removal, of whom 1,412 have criminal convictions. Due to lack of travel document issuance, ICE continues to be compelled to release Cambodian nationals into U.S. communities, some with serious criminal convictions, including weapons and sex offenses, and drug convictions.

Specific sanctions effective September 13, 2017 are listed below:

The U.S. Embassy in Phnom Penh, Cambodia has discontinued the issuance of B visas (temporary visitors for business or pleasure) for Cambodian Ministry of Foreign Affairs employees, with the rank of Director General and above, and their families.

The U.S. Embassy in Asmara, Eritrea has discontinued the issuance of all B visas (temporary visitors for business or pleasure).

The United States Embassy in Conakry, Guinea has discontinued the issuance of B visas (temporary visitors for business or pleasure), and F, J, and M visas (temporary visitors for student and exchange programs) to Guinean government officials and their immediate family members.

The United States Embassy in Freetown, Sierra Leone has discontinued the issuance of B visas (temporary visitors for business or pleasure) to Ministry of Foreign Affairs officials and immigration officials.

###

## Topics

BORDER SECURITY (/TOPICS/BORDER-SECURITY)

## Keywords

BORDER SECURITY (/KEYWORDS/BORDER-SECURITY)    VISA (/KEYWORDS/VISA)

Last Updated: 02/05/2021

12/13/24, 9:43 AM    Trump Administration Punishes Countries That Refuse to Take Back Deported Citizens - The New York Times

# Trump Administration Punishes Countries That Refuse to Take Back Deported Citizens

By Ron Nixon

Sept. 13, 2017

WASHINGTON — The Trump administration has imposed visa sanctions against four countries that have refused to take back citizens who were convicted of crimes in the United States and ordered deported, officials said on Wednesday.

The Department of Homeland Security said it notified the State Department that the governments of Cambodia, Eritrea, Guinea and Sierra Leone had denied or unreasonably delayed accepting the return of convicts. American diplomats in the countries were ordered to impose visa restrictions, officials said in a statement, but did not say what types of visas would be affected.

"International law obligates each country to accept the return of its nationals ordered removed from the United States," said Elaine Duke, the acting secretary of Homeland Security. "Cambodia, Eritrea, Guinea, and Sierra Leone have failed in that responsibility."

Officials said the restrictions would remain in place until the countries cooperate.

The issue has been a longstanding problem for officials at Immigration and Customs Enforcement, the agency charged with deportations.

They say other nations will often refuse to issue travel documents or delay providing them. In turn, agency officials said, they are forced to release criminals, including those who have committed assaults and murders, in the United States. A 2001 Supreme Court ruling barred the government from detaining immigrants indefinitely simply for lack of a country willing to take them.

The Obama administration was criticized for not using its authority to impose visa sanctions against countries that refused to work with American officials to deport immigrants with criminal convictions.

In one of the most recent examples, ICE officials had to release in 2012 a Haitian immigrant, Jean Jacques, who had served time for attempted murder; Haitian officials blocked his deportation because they said Mr. Jacques could not prove that he was a citizen. In June 2015, he stabbed to death Casey Chadwick, a 25-year-old woman from Norwich, Conn., and he was sentenced last year to 60 years in prison in a case that received widespread attention.

President Trump, who campaigned on cracking down on illegal immigration, had promised to punish countries that refused to take back their citizens and signed an executive order in January directing the departments of State and Homeland Security to suspend visas from countries that refused to take back their citizens.

Immigration officials said the sanctions send a message to the holdout nations.

"American citizens have been harmed because foreign governments refuse to take back their citizens," said Thomas Homan, the acting director of ICE. "These sanctions will ensure that the problem these countries pose will get no worse as ICE continues its work to remove dangerous criminals from the United States."

Homeland Security officials said about 700 Eritrean nationals in the United States are subject to final orders of removal, but Eritrean officials have refused to cooperate. More than 1,900 Cambodian nationals in the United States are subject to a final order of removal, and 1,412 have criminal convictions, officials said.

ICE officials say they have been forced to release about 2,137 Guinean and 831 Sierra Leone nationals, many with serious criminal convictions.

*Get politics and Washington news updates via Facebook, Twitter and the Morning Briefing newsletter.*

A version of this article appears in print on , Section A, Page 16 of the New York edition with the headline: U.S. Punishes Four Countries for Refusing to Take Back Criminals

# Eritrea, Sierra Leone and Guinea face U.S. visa sanctions over deportees snub



SIERRA LEONE

By Abdur Rahman Alfa Shaban
Last updated: 13/08 - 11:04

Three African countries risk visa suspension by the United States due to their refusal to take back nationals who scheduled to be deported from the States.

West African neighbours, Guinea and Sierra Leone, are listed with East African nation Eritrea completing the list. A Sierra Leonean journalist reports that the three have been put on what the U.S. terms 'recalcitrant nations' list.

By implication, the U.S. could suspend the issuance of visas to its government officials as a punitive measure. The State Department, he added, is due to officially communicate the position to the respective governments.

In the case of Sierra Leone, the refusal to take back deportees was because the foreign ministry had contested their nationality status of the affected persons. A claim the State Department rejects insisting that all persons marked for deportation held valid Sierra Leonean passports.

There is a point of concern for the affected countries given that the 72nd United Nations General Assembly takes off in a little over two weeks in New York. Under the sanction regime, U.S. Homeland Security reserves the right to refuse entry to officials even on arrival in the country.

The U.S. have long threatened a number of African countries with mass deportation of their nationals. 7000 Ghanaians were threatened with deportation in April this year before 70 of them were sent back in June – all of them in handcuffs.

### YOU MAY ALSO LIKE

**Uganda court orders government to pay compensation to LRA victims**
2 hours ago

**Kenyan man jailed 50 years for murdering gay rights Activist**
3 hours ago

**UN Climate deals criticized for slow progress and uncertain outcome**
5 hours ago

Learn more about **LSEG**

# U.S. will not issue some visas in four nations in deportation crackdown

By **Arshad Mohammed** and **Yeganeh Torbati**

September 13, 2017 4:54 PM EDT · Updated 7 years ago






[1/2] FILE PHOTO: A member of the Al Murisi family, Yemeni nationals who were denied entry into the U.S. because of the travel ban, shows the cancelled visa in their passport from their failed entry to... Purchase Licensing Rights ⬈ Read more

WASHINGTON (Reuters) - The U.S. State Department on Wednesday will stop issuing certain kinds of visas to some citizens of Cambodia, Eritrea, Guinea and Sierra Leone because the nations are not taking back their citizens the United States wants to deport.

The new policies, laid out in State Department cables reviewed by Reuters on Tuesday and described in a department news briefing, are the latest

Reuters                                                                                                    My News

"The Secretary determines the categories of applicants subject to the visa restrictions, and the categories differ slightly country by country," State Department spokeswoman Heather Nauert said in the news briefing on Tuesday.

13

The visa sanctions vary in severity, with Eritrea facing the harshest ones. Any Eritreans who apply in their own country for most U.S. business or tourist visas will be rejected, according to one of the cables. (bit.ly/2jnTWo8)

In Guinea, the United States will no longer issue a range of tourist, business and student visas to government officials and their immediate family members who apply from inside the country, another cable said. (bit.ly/2y5zMSS)

Advertisement · Scroll to continue

"We are all surprised by the American authorities' decision but the foreign minister is at this moment working so that the situation returns to normal," Guinea government spokesman Damantang Albert Camara told Reuters.

"It must be understood that Guinea has never wanted to prevent the repatriation of its nationals who are in conflict with American law."

In Cambodia, the sanction is tailored. Only Foreign Ministry employees at or above the rank of director general, and their families, who apply inside the country will be barred from getting some visas for personal travel, a third cable said. (bit.ly/2y5AEHh)

Advertisement · Scroll to continue

For Sierra Leone, only Foreign Ministry and immigration officials will be denied tourist and business visas at the U.S. Embassy in Freetown, according to a fourth cable. (bit.ly/2wptf3v)

14

"American citizens have been harmed because foreign governments refuse to take back their citizens," Thomas Homan, acting director of U.S. Immigration and Customs Enforcement, said in a Department of Homeland Security statement.

SOME EXCEPTIONS

In each case, there are exceptions for citizens of the four nations who apply for visas from outside their countries, as well as exceptions on humanitarian grounds or for travel "deemed in the interest of the United States."

The new rules, which go into effect on Wednesday, do not affect visas that already have been granted.

Visa sanctions are allowed by U.S. immigration law to punish countries that refuse to accept their citizens back from the United States. In practice, the United States has rarely taken that step - just twice in the past decade and a half, according to a Department of Homeland Security spokesman.

The most recent instance was in October 2016 when the Obama administration stopped issuing visas to Gambian government officials and their families because the government was not taking back U.S. deportees from Gambia.

Three of the four countries included in the current visa restrictions - Cambodia, Guinea, and Eritrea - were on a July list of nations deemed "recalcitrant" by U.S. immigration authorities. It was unclear immediately why Sierra Leone was included in Tuesday's action even though it was not on the "recalcitrant" list in July.

ICE has had to release roughly 2,137 Guineans and 831 Sierra Leone nationals, many with "serious criminal convictions," the DHS statement said. In addition, around 700 Eritreans and more than 1,900 Cambodians are living in the United States who have been ordered removed, DHS said.

DHS officials say in some cases, the agency has had no choice but to release convicted criminals who served prison time but could not be returned to their home country because it refused to take them back.

The Trump administration has made it a priority to pressure reluctant countries to take back their citizens. As of July, the 12 nations deemed "recalcitrant" were China, Cuba, Vietnam, Laos, Iran, Cambodia, Burma, Morocco, Hong Kong, South Sudan, Guinea and Eritrea.

According to 2016 congressional testimony by Michele Bond, former assistant secretary of state for consular affairs, Cuba was the "most recalcitrant country on repatriation of its nationals," although she did not give numbers.

Other countries then at the top of the Immigration and Customs Enforcement (ICE) list of recalcitrant countries were China, Somalia and India, Bond said at the time. None of those countries are facing visa sanctions.

Reporting By Arshad Mohammed and Yeganeh Torbati; Additional reporting by David Shepardson in Washington and Saliou Samb in Conakry, Guinea; Editing by Bill Trott and Richard Chang

Our Standards: **The Thomson Reuters Trust Principles.**

Suggested Topics:

( World )

Purchase Licensing Rights

Read Next

Americas
**Canada finance minister quits after clash with Trudeau, deals blow to government**
ago

Middle East
**Palestinians mourn dead after Israeli strike on Gaza's Khan Younis**
ago

United States
**No US government group in Syria for search of Austin Tice, State Department says**
ago

15

**HAPPENING NOW**

Police provide update after deadly school shooting in Madison, Wisconsin. Watch CNN

# US to sanction 4 countries for refusing deportations

By David Shortell, CNN

⏱ 3 minute read · Updated 3:09 AM EDT, Thu August 24, 2017

Video Ad Feedback

Who is a target for deportation?

01:01 - Source: CNN

See More Videos

**Washington (CNN)** — The Trump administration will impose visa sanctions on four countries that refuse to take back foreign nationals deemed to be in the US illegally, Department of Homeland Security spokesman Dave Lapan said Wednesday.

The four countries – Cambodia, Eritrea, Guinea and Sierra Leone, according to a DHS source close to the deliberations – come from a running list of countries the US designates as "recalcitrant" for not accepting, or delaying, repatriation of their own citizens after the US has tried to deport them.

On the campaign trail, then-candidate Trump railed against the Obama administration, and his opponent, former secretary of state Hillary Clinton, for not employing sanctions to pressure uncooperative countries.

"There are at least 23 countries that refuse to take their people back after they've been ordered to leave the United States, including large numbers of violent criminals. They won't take them back. So we say, 'OK, we'll keep them.' Not going to happen with me, not going to happen with me," Trump said in an August 2016 speech.

Citizens of the four countries identified by the administration will face visa restrictions that could prevent them from entering the US.

The sanctions process was triggered last week in a letter sent to the State Department by Acting DHS Secretary Elaine Duke, Lapan said. It is up to the State Department to determine the visa restrictions' scope, and to initiate them.

In a statement, a State Department official confirmed receipt of the DHS letter.

"When we receive such notification, the law requires a suspension of visa issuance. We follow a standard process to implement a visa suspension as expeditiously as possible in the manner the Secretary determines most appropriate under the circumstances to achieve the desired goal," the official said.

"That process includes internal discussions with, and official notification to, affected countries. We are not going to get ahead of that process. When we have completed the process, information will be available about the terms of the visa suspension," the official continued.

While the US has regularly kept a list of countries considered recalcitrant, only two countries have previously received sanctions under the law: Guyana, in 2001, and The Gambia, in 2016. In

12/16/24, 3:56 PM
US to sanction countries 4 nations for refusing deportations | CNN Politics
Case 1:25-cv-00046-SKO    Document 1    Filed 01/10/25    Page 18 of 18

both cases, US visas were restricted for certain government and diplomatic employees.

Twelve countries have been designated as recalcitrant as of July, Lapan said, including China and Cuba. It was not immediately clear why these specific four countries were chosen.

The sanctions were first reported by the Washington Times. In a news briefing Wednesday, Lapan declined to name the four countries. The State Department also refused to identify the countries.

After a Supreme Court ruling in 2001, immigration authorities have been forced to release after a period of time undocumented immigrants from countries that refuse to accept their repatriation.

Between 2013 and 2016, more than 8,000 undocumented immigrants were released, some after serving time in prison for violent crimes, according to data from the House committee on oversight and government reform.

*CNN's Laura Koran contributed to this report.*

## MORE FROM CNN


Trump has threatened the visas of international ...


These convicted felons say if Trump can be elected president they ...


Trump has vowed to give green cards to college grads. Could that ...

## NEWS & BUZZ


Consumer backlash erupts after backpack in video